## HENRY MOLITOR v. H. F. SHELDON.

1. CITY LOTS—*Use of Street, an Appurtenance.* In a deed made by the original proprietor of an addition to a city, the plat of which was duly signed, acknowledged, certified and recorded, of two town lots fronting on Main street of the addition, the deed containing a covenant for the quiet and peaceable possession of the lots, and all appurtenances, the use and enjoyment of the full width of the street upon which the lots abut, is an appurtenance within the covenant.

2. COVENANT, *When Not Broken.* The covenant for quiet and peaceable possession of the lots and all the appurtenances, is not broken by the covenantor filing a plat of another addition adjoining the first on the west, on which the west thirty feet in width of the entire length of Main street in the first addition, is designated as Princeton road.

3. OBJECTIONABLE OUTBUILDINGS; *No Breach of Covenant.* The procurement by the covenantor of persons who purchased lots in the second addition platted by him, that abut on Main street in the first addition, and on South Main street in the second addition, to front their dwelling houses on South Main street in the second addition, and erect their objectionable outbuildings on the end of their lots fronting on Main street in the first addition, and across the street and in front of the two lots, is not a breach of the covenant for the quiet and peaceable possession of said town lots and the appurtenances thereto.

*Error from Franklin District Court.*

ACTION by *Molitor* against *Sheldon*, to recover damages upon facts stated and covenants of title to, and for quiet and peaceable possession, etc., of lots 27 and 29, in block 2 of Sheldon & Hamblin's addition to the city of Ottawa. Trial by the court, February 15, 1886; demurrer to plaintiff's evidence sustained, and judgment for defendant. The plaintiff brings the case here. Other facts are stated in the opinion.

*John W. Deford,* for plaintiff in error.

*W. H. Clark,* for defendant in error.

Opinion by SIMPSON, C.: The theory upon which this action is sought to be maintained is, that the acts complained of are a breach of the covenants for quiet and peaceable possession. The argument is, that the plaintiff in error is the owner of, and is occupying as a residence, lots 27 and 29, in block 2, of Sheldon & Hamblin's addition to the city of Ottawa; that these lots front on a street sixty-seven feet wide, designated on the recorded plat of that addition as Main street; that the plaintiff in error bought his lots, erected his dwelling house and outbuildings, and constructed his sidewalks with reference to that street and its width as designated on the plat; that the use and enjoyment of the full width of that street, as an appurtenance to these lots, have been disturbed by the act of Sheldon in platting another addition, immediately west and adjoining, by which he has designated the west thirty feet in width of Main street as Princeton road, and thereby committed a breach of this covenant, by inducing and requiring purchasers of lots on the opposite side of Main street from Molitor, to erect their dwelling houses on the west and their objectionable outbuildings on the east end of their lots, thus subjecting him to noxious smells, and depreciating the value of his property from twenty-five to fifty per cent. It may be, and it is probably the law, that the use and enjoyment of the full width

of a street upon which lots abut or front, is an appurtenance to the lots, and that they are within a covenant for quiet and peaceable possession of lots and their appurtenances; and if this is true, the argument of the plaintiff in error extends too far. The covenant may go the full width of the street, but the most liberal construction would not stretch it across the lots abutting the opposite side of the street. The covenant ceases to be operative when the boundary line of the street is crossed. The certification and filing of the plat of the addition for record estop Sheldon from a denial that the street is sixty-seven feet wide, and his deed to Isabelle Green and its covenants that inure to the benefit of Molitor by subsequent conveyances, bind him to do no act that will interfere with appurtenances to the lots conveyed, the only one being, so far as the street is concerned, the free use and enjoyment of its full width. This covenant cannot be so liberally construed as to embrace the character of the buildings to be erected on the opposite side of the street, or to control the action of owners of other lots in facing or fronting their dwellings as they may choose.

On May 14, 1870, H. F. Sheldon and G. W. Hamblin duly platted an addition to the city of Ottawa, adjoining the original plat of the city on the south, and designated a street sixty-seven feet wide called Main street. The addition was divided from the original plat by a street called Seventh street, and Main street in the addition runs from a point on Seventh street opposite the center of block 124 on the original plat, due south the entire length of the addition. In November, 1870, Sheldon & Hamblin duly conveyed lots 27 and 29 in block 2, in their addition, to Isabelle Green, " with the appurtenances and all the estate, title and interest of the parties of the first part therein," with the usual covenants of warranty for quiet and peaceable possession, etc. The plaintiff in error holds his title and these covenants through certain mesne conveyances. He acquired title in October, 1882, and immediately took possession, erected a good dwelling house and outbuildings, dug a well, planted trees, constructed sidewalks, and has resided thereon

*1. City lots; use of street, an appurtenance.*

since sometime in 1883.  At the time of his purchase and improvement, the land on the opposite side of the street had not been platted into town lots, but was a corn field.  Sheldon owned the ground on the west side of Main street, opposite the residence of Molitor; and on the 12th day of April, 1884, he and Robert Atkinson, who owned some land west of Main street, platted an addition to the city of Ottawa, and called it Sheldon & Atkinson's addition.  On the plat of this addition, the west thirty feet in width of Main street in Sheldon & Hamblin's addition is designated as Princeton road.  Out of this grows the contention of counsel for plaintiff in error, as one of the breaches of the covenant, that this designation of Princeton road of the width of thirty feet, leaving Main street only thirty-seven feet wide, is an ouster, or a disturbance of the right of Molitor to the use and enjoyment of the full width of Main street as designated on the plat of Sheldon & Hamblin's addition.  But this cannot be so, for the very evident reason that when Sheldon & Hamblin filed

2. Covenant, when not broken.

the plat of their addition for record, on the 14th day of May, 1870, designating Main street as sixty-seven feet wide, the fee to the street immediately vested in the county, subject to the trust for public use, and from that moment Sheldon and Hamblin, or either of them, could do no act that could deprive any person owning lots abutting on said street, or the general public, from the use and enjoyment of the full width of the street; hence the later act of Sheldon, in filing the plat of Sheldon & Atkinson's addition, and attempting to designate a part of Main street in the plat of Sheldon & Atkinson's addition as Princeton road, could not have in law the effect claimed for it by the plaintiff in error.

Another breach of the covenant is alleged to have occurred when Sheldon induced and required purchasers of lots in Sheldon & Atkinson's addition to erect their dwellings on the west and their outbuildings on the east end of their lots.  South Main street in Sheldon and Atkinson's addition is a continuation of Main street on the original plat of the city in a southerly direction.  It is the first street west of Main street

in Sheldon & Hamblin's addition, and is so near to it that there is only one tier of lots between Main street in the Hamblin addition, and South Main street in the Atkinson addition, the lots between them fronting on both streets. Persons who purchased these lots erected their dwelling houses on the west end of their lots, so that their residences would face South Main street, a continuation of Main street on the original plat. This necessarily caused them to erect their

3. Objectionable outbuildings; no breach of covenant.

stables, pig pens, privies, etc., on the east end, and facing on Main street in Sheldon & Hamblin's addition. Is this a breach of his covenants? We think not. They cannot be so liberally construed as to embrace the character of buildings upon the opposite side of the street, or be held to govern the choice of owners of other lots as to how they would front their residences. Molitor, as we view this cause, is in the quiet enjoyment and peaceable possession of all that passed to him by reason of the conveyance to Isabelle Green and the subsequent grantees, and can find no act of Sheldon that has had the legal effect to oust or disturb that enjoyment and possession. The learned judge who tried the case below says:

"I am wholly unable to see, from any view I take of the evidence, how it makes out a cause of action. I shall assume for the purpose of this demurrer that all the covenants made by Sheldon and Hamblin to Isabelle Green, have passed by the conveyances read in evidence to Molitor, and that he is entitled to the full protection the covenants afford. I shall also assume that Main street, as designated in the original plat of Sheldon & Hamblin's addition, was sixty-seven feet wide, and that when the addition was laid out the parties purchased on the faith of a street being so opened and dedicated to the uses of the public. Thus we have an addition laid out several years ago, called 'Sheldon & Hamblin's addition,' on one side of which there was a street designated as 'Main street,' and sixty-seven feet wide. Opposite to that addition, and to the westward of it across this Main street, was a tract of vacant land. Molitor bought lots 27 and 29 in block 2, of Sheldon & Hamblin's addition, and at that time there was opposite to these lots a corn field, or what had been a corn field

a year before; a vacant tract of land, not subdivided into lots and streets and alleys. That is the evidence on that point.

"Sometime later, Sheldon, the defendant here, in connection with Robert Atkinson, laid out upon this tract of vacant land another addition to the city of Ottawa, which they called 'Sheldon & Atkinson's addition," and through the new addition so laid out they projected a street which they called 'South Main street.' This left between South Main street in the latter addition, and Main street in the former addition, certain lots extending from one street to the other. These lots fronted upon both streets, precisely as much upon Main street as upon South Main street. Sheldon and Atkinson, it appears, afterward made conveyances of the lots so fronting upon the two streets to various parties, and although it is not offered in evidence, it appears that parties purchasing entered upon the lots and erected their dwellings and outbuildings thereon. They have erected in the main, perhaps altogether, their dwelling houses fronting west on South Main street, and the outbuildings on the other end of the lots, fronting on Main street. There is some evidence that the Adventist church people purchased lots on the extreme southern end of block 2 of the new addition. I think it is something like a thousand feet away from and south of Molitor's property, and with the lot purchased for a church they purchased some three or four other lots. At the time they purchased the lots they entered into an agreement with Sheldon, stipulating that they would front their church on South Main street, and the church was accordingly built on that street, but it does not appear that any outbuildings were erected. Afterward, by mutual consent, the agreement with reference to the frontage of the buildings was rescinded, the deed was taken up and destroyed, and another deed given without such restriction; so that there is no agreement with reference to the other lots now in existence. It also appears that Sheldon conveyed to Bodley three lots without any such agreement.

"There is no evidence that I am able to discover, of any agreement between Sheldon and Atkinson and the parties to whom they may have conveyed the lots, as to which way they should front their buildings. I think that the evidence shows that the parties purchasing the lots which fronted on both streets, have simply exercised an option; have exercised a right which they had, and erected their buildings in a way they saw fit. And I do not understand that any party who buys property in a city has a lawful right to say what sort of buildings

shall be erected in his vicinity, or immediate frontage, except to prevent the erection of such buildings or structures as will be a nuisance. For instance, I own a lot on Elm street, in this city. If I, because of some peculiarity or some eccentric notions, should have erected my house fronting on the alley, and put my woodsheds, barn, and privy fronting on the street, I presume that it would be very obnoxious to my neighbors; but unless I allowed those structures to become a nuisance, they would have no lawful redress. I would be exercising a right which I had, to put my buildings where I pleased upon my lots; but the very moment they became a nuisance, my neighbors would have a remedy in the law. Now it is true that the covenants in the deed give the quiet and peaceable possession of the property, in the manner and for the particular purposes intended in the grant. But here this man has the use, benefit and enjoyment of his property precisely as when he purchased it. He has in his front a street sixty-seven feet wide, and named Main street. Sheldon has no power to change the name of that street; that is entirely beyond his power. The street was dedicated to the public, and there is no power to change the name except in the city council; and the making and filing of a plat of another addition, afterward, in which that street is called 'the Princeton road,' did not change the name of the street. And besides, no party would lose the benefit and enjoyment of the street by change of the name Main street to the Princeton road; that would not interfere with anybody's property rights. It is suggested that this line of buildings erected on Main street has resulted in a depreciation of the property of the plaintiff, and of other parties living upon that street, because of their unsightliness and because of the noxious smells. Now if that be true, whenever these things become nuisances, then the parties who erected them will be liable for such damage as may result; but until they do become nuisances, nobody is liable. Sheldon had an undoubted right to lay out the addition; he violated no law in so doing. And having laid it out, and sold the lots, it follows that if anybody is liable it is the parties erecting the buildings. But the evidence here utterly fails to show that Sheldon had anything whatever to do with the building of the barns and privies; and if Sheldon had been a party to the erection of these outbuildings, he certainly would not be liable in this action for damages, unless it is shown that the buildings were nuisances. But in the first place, the evidence fails to show that they are nuisances; and in the second, it fails to

show that Sheldon had anything to do with putting them there. Now, that Molitor has suffered no injury, I do not pretend to deny, but it is incident to a purchase of property anywhere. 'A' may go out to the south line of this city and purchase five acres of land with the view of having plenty of room all around him, and being rid of the disagreeable features incident to a closely-packed population. He may erect a fine dwelling house and improve the purchase till he has made it very valuable, and yet some day 'B' may purchase ten acres of vacant land adjoining him, and lay it out into an addition, with blocks, and streets, and alleys, and may sell the lots to people who will erect a very inferior class of houses. All this may depreciate the value of A's property, and yet if the inferior buildings do not become a nuisance, he has no legal remedy. A livery stable may be erected in front of his residence upon which he has expended much money, and nobody will deny that it diminishes the value of the property; but unless it becomes a nuisance, I see no legal redress.

"The evidence in this case fails to show a cause of action, and the demurrer must be sustained."

We find no material error in the record, and therefore recommend that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.